IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LIBERTY MUTUAL
INSURANCE COMPANY,
    Plaintiff,

v.                                                                 Civil Action No. 3:25cv603 (DJN)

HOPEMAN BROTHERS, INC., *et al.*,
    Defendants.

## MEMORANDUM ORDER
**(Adopting in Part Report and Recommendation)**

In this adversary proceeding, Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") seeks a declaratory judgment concerning its obligations regarding asbestos-related liability in conjunction with claims against Hopeman Brothers, Inc. ("Hopeman"), an entity currently seeking to reorganize through Chapter 11 bankruptcy. *In re Hopeman*, Case No. 24-32428 (Bankr. E.D. Va. June 30, 2024) ("Hopeman Bankruptcy"). This matter comes before the Court on Liberty Mutual's Objection (ECF No. 21 ("Objection" or "Obj.")) to the Report and Recommendation on Motions to Dismiss issued by United States Bankruptcy Judge Keith L. Phillips on December 4, 2025. *Liberty Mutual Insurance Company v. Hopeman Brothers, Inc. et al.*, Adversary Proceeding No. 25-03020 (Bankr. E.D. Va. May 23, 2025) ("*Liberty Mutual Adv. Pro.*"),[1] ECF No. 101 (the "R&R")). There, Judge Phillips recommends that the Court either (1)

---

[1] The Court notes that two separate dockets contain filings relevant to this proceeding: one in the Bankruptcy Court, Adversary Proceeding No. 25-03020 (Bankr. E.D. Va. May 23, 2025), and one in the District Court, Civil Action No. 3:25cv603 (E.D. Va. Aug. 1, 2025). Many of the filings originally docketed in the bankruptcy matter also appear on the District Court docket as a part of two record transmittals from the Bankruptcy Court. (ECF Nos. 12, 28.) To avoid confusion, the Court will cite to individual docket entries on the Bankruptcy Court's docket

abstain from exercising jurisdiction over this proceeding or (2) dismiss Liberty Mutual's First Amended Complaint, (*Liberty Mutual Adv. Pro.*, ECF No. 17 ("Amended Complaint" or "Am. Compl.")). (R&R at 2–3.) For the reasons set forth below, the Court OVERRULES Liberty Mutual's Objection (ECF No. 21), GRANTS Hopeman's Motion to Dismiss or Abstain as to First Amended Complaint for Declaratory Judgment, (*Liberty Mutual Adv. Pro.*, ECF No. 33 ("Hopeman's Motion to Dismiss or Abstain")), and ADOPTS IN PART Judge Philips's Report and Recommendation (*id.*, ECF No. 101).

## I.   BACKGROUND

This action stems from the Chapter 11 bankruptcy proceedings of Hopeman Brothers, Inc., a company that provided marine joiner services for shipbuilders. (R&R at 3[2]); *Hopeman Bankruptcy*.[3] In this adversary proceeding, Plaintiff Liberty Mutual, which formerly provided various types of asbestos-related insurance to Hopeman, seeks a declaratory judgment that a pair of 2003 agreements between itself and Hopeman (the "2003 Settlement Agreements") resulted in a complete release of Liberty Mutual from any further obligations in conjunction with Hopeman's asbestos-related liability. (Am. Compl. ¶ 105; R&R at 4–5.) In addition to Hopeman, Liberty Mutual sues members of the Official Committee of Unsecured Creditors (the "Committee"), Huntington Ingalls Industries, Inc. ("HII"), Marla Rosoff Eskin, Esq. (in her capacity as Future Claimants' Representative), and a host of individuals holding asbestos-related

---

rather than to their transmitted counterparts on the District Court docket, unless the document was filed separately on both dockets. In those instances, the Court will reference only the docket number assigned by the District Court's filing system.

[2]   The Court employs the pagination assigned to all documents by the CM/ECF docketing system.

[3]   For a more detailed account of the underlying facts, the Court refers the reader to Judge Phillips's Report. (R&R at 3–5.)

2

claims against Hopeman and who have appeared in the Hopeman Bankruptcy matter. (Am. Compl. at 1–2.) This matter was reassigned to the undersigned on August 6, 2025, (ECF No. 3), and the Court subsequently granted Liberty Mutual's motion to withdraw the reference for this adversary proceeding. (ECF No. 14.)

Before the Court withdrew the reference, various defendants filed motions in the Bankruptcy Court seeking dismissal of this adversary proceeding.[4] (*Liberty Mutual Adv. Pro.*, ECF Nos. 23, 28, 33, 35, 39, 41, 42.) These motions raised a variety of bases for dismissal, including lack of subject matter jurisdiction, failure to join a necessary party, insufficient service of process and failure to state a claim. In addition, Hopeman moved this Court to abstain from exercising its jurisdiction over the adversary proceeding under 28 U.S.C. § 1334(c)(1).[5] (*Id.*, ECF No. 33 ¶¶ 29–35.) Upon completion of all briefing, the Bankruptcy Court held a hearing on August 21, 2025, and took the motions under advisement. (*Id.*, ECF Nos. 73, 74.) Following withdrawal of the reference, this Court entered an Order referring the various motions to dismiss to Judge Phillips for proposed findings of fact and conclusions of law. (ECF No. 16.)

On December 4, 2025, Judge Phillips entered his R&R, which recommends that the Court grant the motions to dismiss and either abstain from hearing this adversary proceeding or, in the alternative, dismiss the proceeding pursuant to Rule 12 of the Federal Rules of Civil Procedure

---

[4]  One such motion was filed by the Committee, which is not named as a defendant in this action and has not formally moved to intervene. (*Liberty Mutual Adv. Pro.*, ECF No. 28.) Since Judge Phillips's recommendation for abstention results from a different party's motion, and since this Order adopts only that particular recommendation, the Court need not further address the propriety of the Committee's motion to dismiss at this time.

[5]  Several individual defendants moved the Court to abstain under the Declaratory Judgment Act, *Liberty Mutual Adv. Pro.*, ECF No. 24 at 20–24, while a different group of individual defendants moved the Court to abstain under both 28 U.S.C. § 1334(c)(1) and (2). (*Id.*, ECF No. 42 ¶¶ 40–50.)

3

and Rule 7012 of the Federal Rules of Bankruptcy Procedure. (R&R at 2–3.) On December 18, 2025, Liberty Mutual filed its Objection to the R&R. (ECF No. 21.) Hopeman filed a response to the Objection on January 2, 2026, (ECF No. 24), and the Committee filed a statement in support of the R&R the same day. (*Liberty Mutual Adv. Pro.*, ECF No. 105.)[6] Liberty Mutual filed its reply on January 8, 2026, (ECF No. 26), rendering its Objection ripe for review.

## II.  LEGAL STANDARD

District courts may abstain from hearing "a particular proceeding arising under title 11 or arising in or related to" such a case "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Courts enjoy "considerable discretion" in deciding whether to abstain from such proceedings. *In re LandAmerica Fin. Grp., Inc.*, No. 08-35994-KRH, 2011 WL 203986, at *5 (Bankr. E.D. Va. Jan. 21, 2011). When rendering this discretionary determination, courts in this District regularly consider the following twelve factors:  (1) the court's duty to resolve matters properly before it; (2) the predominance of state law issues and non-debtor parties; (3) the economical use of judicial resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) whether the case involves questions of state law better addressed by the state court; (7) comity considerations; (8) any prejudice to the involuntarily removed parties; (9) forum non conveniens; (10) the possibility of inconsistent results; (11) any expertise of the court where the action originated; and (12) the existence of a right to a jury trial. *In re Ahearn*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003) (citing *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C. 2001)). "Unlike the all-or-nothing analysis required for mandatory

---

[6]  HII joins the Committee's and Hopeman's filings. (*Liberty Mutual Adv. Pro.*, ECF No. 107.)

4

abstention [under § 1334(c)(2)], the Court is free to consider these factors as it deems appropriate in the full exercise of its discretion." *LandAmerica*, 2011 WL 203986 at *6.

Federal Bankruptcy Rule 9033(c) sets forth the standard for this Court to apply when reviewing objections to a Bankruptcy Court's proposed findings of fact and conclusions of law. Under that rule, the district judge "must review *de novo* — on the record or after receiving additional evidence — any part of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made [in accordance with this rule]." Fed. R. Bankr. P. 9033(c)(1). Upon such review, the Court "may accept, reject, or modify the proposed findings of fact or conclusions of law, take additional evidence, or remand the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(c)(2).

## III. ANALYSIS

Judge Phillips recommends that this Court abstain from exercising its jurisdiction to adjudicate this adversary proceeding under 28 U.S.C. § 1334(c)(1).[7] (R&R at 7–11.) Considering the twelve-factor test regularly employed in this District, Judge Phillips finds that four of these factors strongly favor abstention: the predominance of state law issues, the existence of state law questions better addressed by state courts, the limited relation between this action and the bankruptcy proceeding, and forum non conveniens. (*Id.*) Based on these four factors, Judge Phillips finds that "permissive abstention is proper" and recommends that the Court abstain from adjudicating this matter. (*Id.* at 11.)

---

[7] Judge Phillips also recommends, in the alternative, that the Court (1) decline to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a); (2) dismiss Liberty Mutual's Amended Complaint as to certain defendants under Federal Rule of Civil Procedure 12(b)(5); and (3) dismiss the Amended Complaint in its entirety for failure to join a necessary party under Rule 19. (R&R at 12–15, 18–24.) Since the Court agrees with and adopts Judge Phillips's recommendation to abstain under 28 U.S.C. § 1334(c)(1), the Court need not consider these alternative recommendations or Liberty Mutual's objections thereto.

5

As to the predominance of state law issues and the superior ability of state courts to determine these issues, Judge Phillips finds that "a state-law issue not only predominates the Amended Complaint, it is the only issue raised." (*Id.* at 8.) He highlights that the declaratory judgment sought by Liberty Mutual concerns the 2003 Settlement Agreements, which are "contracts governed by state law," along with their effect on asbestos-related claims "arising under state law," without implicating any questions of federal law. (*Id.* at 9.) Judge Phillips also underscores the existence of open choice-of-law questions concerning which state law applies to this analysis, given that some bankruptcy claimants assert that *lex locus delicti* principles govern their claims. (*Id.*) As such, determination of these issues and the interpretation of the applicable state law provisions "is a task better addressed by the state courts with jurisdiction over the claims." (*Id.*)

Concerning the relationship between this adversary proceeding and the underlying bankruptcy matter, Judge Phillips finds that the matters are only "tangentially related." (*Id.*) He emphasizes that the reorganization plan in the underlying proceeding (the "Plan") "was specifically engineered to allow for the . . . payment of . . . [c]laims regardless of any third-party recovery source." (*Id.*) Thus, even though this adversary proceeding's outcome "may impact" the recovery a claim holder "may ultimately receive," depending on Liberty Mutual's liability, this proceeding in no way impacts Hopeman's ability "to perform or fund" the Plan — the central objective of the bankruptcy process at issue here. (*Id.* at 9, 9 n.10.) Thus, at the most fundamental level, resolving the issue raised by Liberty Mutual in this adversary proceeding "will not affect the administration and closure of the underlying bankruptcy case," demonstrating the limited relation between the two. (*Id.* at 10.)

Finally, Judge Phillips emphasizes the inconvenience of this forum to the more than 80 non-debtor defendants named by Liberty Mutual in this action, none of whom are based in Virginia. (*Id.*) Judge Phillips also highlights that several of these claimants have already filed suit in Louisiana, "seeking to recover against the very insurance coverage Liberty Mutual now seeks to have the District Court declare does not exist." (*Id.*) As such, the Bankruptcy Court finds itself "hard-pressed to justify why [these claimants] should be forced to protect their interests in the Eastern District of Virginia, rather than in the state and federal courts convenient" to them "and where lawsuits may already be pending." (*Id.* at 10–11.)

Liberty Mutual objects to Judge Phillips's recommendation, critiquing his analysis and highlighting additional factors that purportedly weigh against abstention and undermine his recommendation. Countering his state law predominance and comity concerns, Liberty Mutual objects to Judge Phillips's analysis on several grounds. First, while it concedes the predominance of state law issues in this adversary proceeding, Liberty Mutual asserts that this fact "does not move the needle" on abstention, because all "active, non-stayed suits" by claimants against Liberty Mutual remain pending in federal, not state court. (Obj. at 17.) As such, Liberty Mutual dismisses the Bankruptcy Court's comity concerns as purely "theoretical" and "untethered to the current procedural posture," since, in practice, abstention here would merely lead to the issue's determination "in a series of Balkanized federal cases." (*Id.* at 7, 18.) Liberty Mutual also asserts that state law predominance, on its own, fails to "override" what it terms "the overwhelming efficiency and Bankruptcy-related benefits" resulting from this Court's exercise of jurisdiction over the adversary proceeding. (*Id.* at 17.)

Liberty Mutual also objects to Judge Phillips's finding that this adversary proceeding only "tangentially relate[s]" to the underlying bankruptcy proceeding. (*Id.* at 12.) Liberty

7

Mutual asserts that resolving the enforceability of the 2003 Settlement Agreements proves "mission-critical" to the bankruptcy proceeding, because resolution of this question promises to "shed necessary light on the assets and potential sources of compensation available to Hopeman's creditors under the Bankruptcy Plan." (*Id.* at 5, 13.) In Liberty Mutual's telling, the reorganization plan proposed in the Bankruptcy Court "is designed to direct . . . claimants toward Hopeman's insurance coverage via the tort system," with Liberty Mutual as a "prime target" of those redirection efforts. (*Id.* at 13.) Since Liberty Mutual's liability to Hopeman's tort claimants remains unclear, Liberty Mutual argues that adjudicating this adversary proceeding proves essential to assessing whether the proposed Plan "will be a viable means of compensating Claimants" — and thus whether the Plan can accomplish the bankruptcy proceeding's "fundamental purpose [of] resolv[ing] asbestos claims against Hopeman." (*Id.*) Under this theory, Liberty Mutual argues that the two proceedings are closely linked and that exercising jurisdiction here would serve additional interests of judicial economy and avoiding inconsistent results as to the recovery owed to claimants. (*Id.* at 15.)

Finally, Liberty Mutual also objects to Judge Phillips's conclusions concerning the propriety of this forum. Liberty Mutual argues that by participating in the bankruptcy litigation, the defendants, including the individual claimant defendants, "voluntarily entered the Bankruptcy fray" and did so "independently of anything Liberty did or did not do." (*Id.* at 6, 16.) In light of those claimants' voluntary participation, Liberty Mutual submits that it only "makes sense to decide the parties' dispute now . . . with the participation of the stakeholders who are already here." (*Id.* at 6.) Liberty Mutual also asserts that this Court constitutes "the center of gravity" for asbestos-related claims against Hopeman, since "more than half" of

claimants submitted claims in Virginia, and since Hopeman "is a Virginia corporation and elected to undergo Chapter 11 proceedings here." (*Id.* at 16 n.8.)[8]

In addition to disagreeing with Judge Phillips' analysis of the above factors, Liberty Mutual submits arguments in favor of other factors that purportedly deserve greater weight, namely: the Court's duty to resolve matters properly before it, the economical use of judicial resources and avoiding inconsistent results. As to the first of these factors, Liberty Mutual emphasizes both the general precept that a court "'must accept' its grant of jurisdiction, meaning that permissive abstention is the exception," (*id.* at 11 (citing *Virginia ex. rel. Integra REC LLC v. Countryside Sec. Corp.*, 92 F. Supp. 3d 469, 475–76 (E.D. Va. 2015)), and Congress's grant of "expansive jurisdiction" in bankruptcy matters, which it purportedly made "for precisely this situation -- *i.e.*, where a common issue related to the Bankruptcy will affect a diverse array of creditors and other interested parties." (*Id.* at 6.) More importantly, Liberty Mutual repeatedly emphasizes what it asserts are the benefits of a single, uniform resolution of the issue of its liability under the 2003 Settlement Agreements. According to Liberty Mutual, the Court's exercise of jurisdiction would enable the parties to resolve this dispute "efficiently, expeditiously, and uniformly," with "the key stakeholders present," rather than proceed with "the status quo, which will be dozens of piecemeal decisions, decided months or years from now by other courts across the country." (*Id.* at 6, 12, 14.) Such singular and uniform resolution would enhance judicial economy, reduce the risk of inconsistent results stemming from these

---

[8]   More generally, Liberty Mutual calls into question the fairness and objectivity of the Bankruptcy Court's recommendation for abstention, because Judge Phillips "castigated" Liberty Mutual for engaging in gamesmanship in a manner that Liberty Mutual deems "unsupported by the record." (Obj. at 19.)

"piecemeal decisions" and permit faster progress in the underlying bankruptcy proceeding. (*Id.* at 6, 12.)

Liberty Mutual relies on *Diocese of Buffalo, New York v. Continental Insurance*, 616 B.R. 10 (Bankr. W.D.N.Y. 2020), to support its Objection. There, the Bankruptcy Court for the Western District of New York confronted a scenario where the debtor in a bankruptcy case filed an adversary proceeding against various insurance companies, seeking a declaratory judgment that determined the availability of insurance coverage under their policies. *Id.* at 11. Two of those insurers asked the bankruptcy court to abstain from exercising jurisdiction over the adversary proceeding, given the existence of a state court action seeking the same determination. *Id.* at 11–12. The bankruptcy court rejected this request. *Id.* at 13. In arriving at its decision, the bankruptcy court acknowledged the existence of the "twelve part test that many courts have applied" in such cases, but chose instead to focus its inquiry entirely on one factor: "How will abstention affect the efficient administration of the bankruptcy estate?" *Id.* at 12. In seeking to answer that question, the court defined the central concern of that estate's administration as "facilitat[ing] a successful reorganization that allows a just and expeditious compensation to creditors." *Id.* In light of the facts before it, the court concluded that the development of a reorganization plan (and the ensuing authorization of payments to creditors) "is not possible" without determining the insurance coverage issue. *Id.* at 13. Based on that conclusion, the court proceeded to inquire "whether a prompt determination of coverage is more likely here in bankruptcy or in state court." *Id.* Given its familiarity with the facts and its conclusion that a state judge "would have only a secondary awareness of the urgency of a decision," the

bankruptcy court found that it was better positioned to render such a determination promptly, militating in favor of exercising its jurisdiction and rejecting abstention on that basis. *Id.*[9]

Liberty Mutual asserts that *Diocese of Buffalo* undermines Judge Phillips's recommendation of abstention, highlighting its efficiency-focused rationale. Liberty Mutual argues that here, the instant adversary proceeding "affords the only meaningful opportunity to adjudicate the availability of coverage . . . with the key stakeholders present." (Obj. at 14.) Thus, *Diocese of Buffalo* supports a finding that, as in that case, factors concerning the interests of justice, the Court's duty to resolve matters properly before it, judicial economy, the relatedness of the state court action to the bankruptcy case and the risk of inconsistent results all weigh in favor of an exercise of jurisdiction, and that these factors trump concerns about comity. (*Id.* at 15.) In addition, Liberty Mutual claims that in the New York case, "the argument for abstention was materially stronger" than here, because "a parallel state court proceeding concerning identical issues was already underway." (*Id.* at 14 (emphasis omitted).)

Finally, Liberty Mutual also objects to Judge Phillips's recommendation on general fairness grounds. (*Id.* at 15.) According to Liberty Mutual, abstaining from this action would permit claimants "to litigate cases seriatim against Liberty and take multiple bites at the apple." (*Id.*). Any wins that Liberty Mutual scored in such cases would only spawn further litigation, where claimants would likely "contend that [a former] holding [in Liberty Mutual's favor] is not binding on them because they were not a party to the [previously decided] action." (*Id.*)

---

[9] The court also provided an additional argument against abstention: the "need for openness and access to direct participation by all affected parties." *Diocese of Buffalo*, 616 B.R. at 13. The presence of these "affected parties" — including creditors — in the bankruptcy proceeding, as opposed to in the state court action (which involved only insurance companies and the debtor, but no creditors), and the bankruptcy court's superior ability to "assure accessible participation by all interested parties" thus served as an additional rationale for the court to exercise its jurisdiction over the declaratory action. *Id.*

Meanwhile, if a claimant were to prevail, other claimants would then be likely to argue that "that one decision binds Liberty moving forward." (*Id.*) Such an "unfair dynamic underscores the necessity of clarifying the legal relationship between [claimants] and Liberty through this action." (*Id.*)

Upon *de novo* review of the R&R and Liberty Mutual's Objection to its recommendation of abstention, the Court accepts Judge Phillips's recommendation to abstain from exercising its jurisdiction over this matter and overrules Liberty Mutual's objections. As explained below, Judge Phillips appropriately attributed controlling weight to factors concerning state law, relation to the bankruptcy proceedings and forum non conveniens. Liberty Mutual's arguments concerning judicial economy, the risk of inconsistent results and fundamental fairness, as well as its arguments on the basis of *Diocese of Buffalo*, fail to outweigh these considerations.

The Court begins by considering Judge Phillips's analysis of the comity and state law factors. The Court agrees with Judge Phillips's assessment, which correctly points out that "the only issue raised" in this proceeding concerns state law, not federal law. (R&R at 8.) Although the facts of this case implicate questions of Virginia law, which this Court routinely addresses, Judge Phillips correctly highlights that this matter likely implicates other bodies of state law depending on where future claims arise and what choice-of-law rules apply in those states. (*Id.* at 9.) These considerations strongly undermine any argument that this Court stands best positioned to assess the merits of the underlying dispute, given state courts' superior expertise resolving issues under their respective state's laws.[10] In sum, the purely state-law nature of this

---

[10] While Liberty Mutual makes much of the fact that all "active, non-stayed litigation between Liberty and the [c]laimants" currently lies in federal court, that fact fails to undermine Judge Phillips's conclusion, given that federal courts possess greater experience adjudicating matters under the state law of their respective districts, and given that future state court actions involving these issues in other states are all but certain to arise. (Obj. at 7.)

12

action and the uncertain scope of underlying questions of state law counsel strongly in favor of abstention based on principles of comity and deference to state courts. Liberty Mutual's objections to Judge Phillips's finding on this point lack merit and are hereby overruled.

The Court also agrees with Judge Phillips's analysis concerning the attenuated relationship between the Hopeman bankruptcy proceeding and this adversary proceeding. While the Court has not yet approved the proposed Plan for reorganization, the Court's review of the Plan and accompanying briefing confirms Judge Phillips's understanding that the Plan "was specifically engineered to allow for the allowance and payment of Asbestos-Related Claims *regardless of any third-party recovery source*." (R&R at 9 (emphasis added).) Liberty Mutual may well be correct in asserting that the outcome of this adversary proceeding bears on the amount of money that current and future asbestos claimants can recover pursuant to their claims.[11] Nothing in the record suggests, however, that resolution of this proceeding would impact either the outcome of the bankruptcy proceeding itself or Hopeman's ability to successfully reorganize, let alone the administration of Hopeman's estate post-bankruptcy. Further, given that the proposed Plan's channeling injunction directs claimants towards *all* insurance coverage held by Hopeman — not just Liberty Mutual's — the Court finds no merit in Liberty Mutual's protestations that, without a resolution of the question of *Liberty Mutual's* liability, the Court will not be able to assess the Plan's viability as a "means of compensating Claimants." *See In re: Hopeman Brothers Inc.*, Civil Action No. 3:26cv16, ECF No. 1-2 at 184 ("Pursuant to Plan Section 8.12, Channeled Asbestos Claimants holding unliquidated Insured Asbestos Claims who wish to recover on such claims shall have the right to initiate, continue, or

---

[11] Judge Phillips implicitly acknowledges this fact in his discussion on subject-matter jurisdiction, finding that "under the Plan, the Debtor's liability to pay an Asbestos-Related Claim will be affected by whether Liberty Mutual has continuing obligations." (R&R at 17.)

13

prosecute an action against Reorganized Hopeman (or if deemed an indispensable party, the Asbestos Trust), and where permitted by applicable nonbankruptcy law, *any Non-Settling Asbestos Insurer* . . . in the tort system to obtain the benefit of the Asbestos Insurance Coverage.") (emphasis added). Since Liberty Mutual's action implicates the *extent* of the compensation that claimants may obtain, rather than their overall ability to obtain compensation or Hopeman's ability to successfully reorganize, the Court finds Liberty Mutual's attribution of "mission-critical" status to this adversary proceeding hyperbolic at best. For all of these reasons, the Court overrules Liberty Mutual's objection to Judge Phillips's finding that the adversary proceeding is only "tangentially related" to the bankruptcy matter and considers this factor to weigh in favor of abstention.

   Liberty Mutual's objection on forum non conveniens grounds also lacks merit. As Judge Phillips highlights, this adversary proceeding involves more than 80 defendants residing outside of Virginia. (R&R at 10.) Forcing them to litigate this matter in a foreign venue, rather than where they reside or where they filed their claims, when this matter's resolution may ultimately have no bearing on them (should they choose to forego claims against Liberty Mutual), clearly raises significant convenience concerns and militates for abstention, as Judge Phillips rightly finds. And just because the claimants decided to participate in the bankruptcy proceeding in the Eastern District of Virginia, the bankruptcy forum selected by Hopeman, does not render this District a convenient forum in which to defend themselves against a separate, state-law action. While this Court likely constitutes the most convenient forum for *Liberty Mutual*, the Court refuses to ignore the severe burden that this proceeding would impose on scores of out-of-state defendants, many of whom are "simply ordinary and hardworking Americans" or their "widows, adult children, and family members . . . seeking to pursue tort claims . . . on behalf of their loved

ones who have died or are suffering from harrowing asbestos-related diseases." *Bestwall Ltd. Liab. Co. v. Off. Comm. of Asbestos Claimants of Bestwall, Ltd. Liab. Co.*, 157 F.4th 579, 581 (4th Cir. 2025) (King, J., dissenting). As such, Liberty Mutual's objection on convenience grounds fails to hold water and the Court overrules it accordingly.

The Court further finds that Liberty Mutual's invocation of additional factors beyond those addressed by Judge Phillips does not undermine his recommendation of abstention. Liberty Mutual's judicial economy and consistency arguments lack merit for two reasons. First, the Court's interest in judicial economy, without more, fails to outweigh the importance of deferring to state courts on matters of state law and the inconvenience of this forum to the vast number of litigants involved — two factors that the Court has already discussed. And second, the Court has significant doubts that resolution of this proceeding would, in fact, achieve the efficiency that Liberty Mutual predicts, given the unknown (and likely significant) number of future cases that will involve third parties unbound by the Court's determination in this proceeding — particularly in separate state law proceedings. Liberty Mutual's efficiency and uniformity arguments remain both too attenuated and insufficiently persuasive to outweigh the multiple factors counseling in favor of abstention.[12]

Liberty Mutual's repeated invocation of *Diocese of Buffalo* fails to alter the Court's calculus, given the critical difference in procedural posture between the two cases and the New

---

[12] The Court stands similarly unpersuaded by Liberty Mutual's emphasis on its duty to resolve matters properly before it. (Obj. at 18.) The action at issue here neither involves federal law nor proves integral to a federal bankruptcy proceeding. Further, the defendants in this action comprise only the relatively small subset of claimants with whom Liberty Mutual enjoys diversity of citizenship — leaving out the vast majority of claimants whose presence might otherwise have destroyed this Court's basis for subject matter jurisdiction. The existence of 28 U.S.C. § 1334(c) demonstrates clear Congressional intent that the Court's "duty" to resolve matters before it is not an absolute one. Further, the facts of this case clearly reinforce the Court's conclusion that the interests of justice support abstention from that "duty" here.

York bankruptcy court's unorthodox approach to resolving the abstention issue. Though the New York case similarly concerned abstention in the context of an action seeking to clarify available insurance coverage, that action occurred *in advance of* drawing up a bankruptcy reorganization plan, and with the express purpose of facilitating the *preparation* of such a plan. *See Diocese of Buffalo*, 616 B.R. at 12 (emphasizing the "broader need to achieve an effective reorganization" and describing the "essential purpose" of the bankruptcy proceeding as "to facilitate a successful reorganization"). The New York court found that it would "not [be] possible" to formulate such a plan (and therefore move the bankruptcy process along) without first determining the available insurance funds. *Id.* at 13.

Here, by contrast, the bankruptcy court is not only capable of formulating a reorganization plan without clarifying the availability of insurance — *it has already done so*. The animating rationale of the New York court's decision against abstention — "facilitat[ing] a successful reorganization" of the debtor — thus stands inapposite to the instant proceeding, where such a reorganization has been all but completed. *Id.* at 12. This reality severely undercuts the persuasive power of *Diocese*'s reasoning. The Court also notes the New York court's choice to expressly disregard the twelve factors commonly used in this District and base its abstention decision purely on efficiency considerations. *See id.* at 12 (explaining that "one question must predominate. How will abstention affect the efficient administration of the bankruptcy estate?") Such an approach flies in the face of this District's well-established practice of considering a broad array of factors, further limiting *Diocese*'s persuasive appeal.

Finally, the Court finds Liberty Mutual's objection on fairness grounds to lack merit as well. Nothing about the Court's decision today precludes Liberty Mutual from making any argument in any future forum regarding the 2003 Settlement Agreements and their effect on

16

Liberty Mutual's liability in asbestos litigation related to Hopeman. Liberty Mutual's concerns about potential arguments by potential future litigants in potential future cases and their potentially preclusive effect in unknown fora do not merit serious consideration. As such, the Court summarily rejects Liberty Mutual's purely theoretical pronouncements about the implications of its decision to abstain from exercising jurisdiction in this matter.

In sum, the Court agrees with Judge Phillips's assessment of the factors concerning comity and state law, the relationship between this matter and the underlying bankruptcy proceeding and forum non conveniens, all of which weigh strongly in favor of abstention. Liberty Mutual's additional arguments concerning judicial economy, the risk of inconsistent results and fundamental fairness, as well as its arguments based on *Diocese of Buffalo*, fail to outweigh these factors. For all of these reasons, the Court agrees with Judge Phillips's recommendation to grant Hopeman's Motion to Abstain and abstains from exercising its jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(c)(1).

## IV. CONCLUSION

Upon performing its *de novo* review and for the reasons stated above, the Court hereby OVERRULES Liberty Mutual's Objection (ECF No. 21) and ORDERS the following:

1. The Report and Recommendation of the Bankruptcy Judge (*Liberty Mutual Adv. Pro.*, ECF No. 101) is ACCEPTED and ADOPTED IN PART as the OPINION of the Court. The Court adopts all portions relevant to the recommendation for abstention under 28 U.S.C. § 1334(c)(1).

2. Hopeman's Motion to Dismiss or Abstain (*id.*, ECF No. 33) is hereby GRANTED.

3. In light of the Court's decision to grant Hopeman's Motion and abstain from this proceeding, all other pending motions to dismiss (*id.*, ECF Nos. 23, 28, 35, 39, 41, 42) are hereby DENIED AS MOOT.

4. The Clerk is directed to CLOSE this case.

Let the Clerk file this Order electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: February 23, 2026